IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WASHINGTON MUTUAL, INC., et al., | ) | Case No. 08-12229 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| WMI LIQUIDATING TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY BOZZUTI, | ) | Adv. No. 10-53131 (MFW) |
| CHANDAN SHARMA, | ) | Adv. No. 10-53147 (MFW) |
| EDWARD F. BACH, | ) | Adv. No. 10-53132 (MFW) |
| HENRY J. BERENS, | ) | Adv. No. 10-53134 (MFW) |
| JOHN M. BROWNING, | ) | Adv. No. 10-53156 (MFW) |
| KEITH O. FUKUI, | ) | Adv. No. 10-53139 (MFW) |
| MARC MALONE, | ) | Adv. No. 10-53152 (MFW) |
| MICHAEL ZARRO, | ) | Adv. No. 10-53143 (MFW) |
| RACHEL M. MILEUR a/k/a | ) | |
| RACHELLE M. MILEUR, | ) | Adv. No. 10-53133 (MFW) |
| THOMAS E. MORGAN | ) | Adv. No. 10-53154 (MFW) |
| ANN TIERNEY, | ) | Adv. No. 11-53299 (MFW) |
| TODD H. BAKER, | ) | Adv. No. 11-54031 (MFW) |
| GENNADIY DARAKHOVSKIY, | ) | Adv. No. 12-50902 (MFW) |
| ROBERT BJORKLUND, DARYL DAVID, | ) | |
| DEBORA HORVATH, JEFFREY JONES, | ) | |
| JOHN MCMURRAY, MICHAEL REYNOLDSON, | ) | |
| DAVID SCHNEIDER, BRUCE ALAN WEBER, | ) | |
| AND JEFFREY WEINSTEIN, | ) | Adv. No. 12-50965 (MFW) |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**[1]

Before the Court is the Motion of WMI Liquidating Trust

("the Trust") for an Order disallowing claims of certain

---

[1]     This Memorandum Opinion constitutes the findings of
fact and conclusions of law of the Court pursuant to Federal Rule
of Bankruptcy Procedure 7052, which is made applicable to
contested matters by Federal Rule of Bankruptcy Procedure 9014.

executive employees (collectively, "the Claimants"), allowing the Trust to distribute the funds held in reserve for the Claimants to other claimants, and dismissing the above adversary proceeding dealing with those claims.  It is opposed by the Claimants, who have filed a Motion seeking a ruling on whether payment of their claims is allowed under applicable federal regulations.  Because the Court concludes that the FDIC has determined that none of the claims of the Claimants can be paid under the applicable federal regulations and that the Court lacks jurisdiction to review or modify that ruling, the Court will grant the Trust's Motion and deny the Claimants' Motion.

I.   FACTUAL BACKGROUND

On September 26, 2008, Washington Mutual, Inc. ("WMI") and WMI Investment Corp. (collectively, the "Debtors") filed petitions under chapter 11 of the Bankruptcy Code.  WMI was a bank holding company that formerly owned Washington Mutual Bank ("WMB").  WMB was the Nation's largest savings and loan association, having over 2,200 branches and holding $188.3 billion in deposits.  This followed the seizure of WMB by the Office of Thrift Supervision (the "OTS") and the sale of substantially all of WMB's assets, including the stock of WMB's subsidiary, WMB fsb, to JPMorgan Chase Bank, N.A. ("JPMC") by the Federal Deposit Insurance Corporation (the "FDIC") as receiver.

After extensive litigation and contested matters, the Debtors obtained confirmation of their Seventh Amended Plan on February 23, 2012.  Under the confirmed Plan, the Trust was tasked with the responsibility to reconcile and litigate objections to claims against the estate.

Between June 2009 and September 2012, the Debtors and the Trust filed numerous objections and amended objections to the Claimants' original and amended claims.  On February 19, 2013, the Trust filed a motion for leave to amend its objections to the claims to add an assertion that the estate is not liable for the claims because they are impermissible under federal regulations prohibiting "golden parachute payments" to senior employees of failing banks or bank holding companies.  The Court denied the motion on August 23, 2013, because any ruling on such an objection would not be binding on the FDIC or the Federal Reserve Bank ("FRB"), who were not parties to the contested matter. (D.I. 111348.)  Instead, the Court directed the Trust to institute litigation against the Claimants, the FDIC, and the FRB to resolve the issue of whether the estate is precluded from paying the Claimants under any applicable statute.

The Trust instituted such an action on September 20, 2013, in the District Court for the District of Washington.  That action was ultimately transferred to the District Court for the District of Delaware on March 19, 2015.  WMI Liquidating Trust v.

FDIC, No. 1:14-cv-01097 (GMS) (D. Del.).

In the interim, on August 14, 2013, the Trust filed an application with the FDIC seeking a determination that it could make payments to some of the Claimants pursuant to settlement agreements it had reached on their claims (the "First Payment Application"). (D.I. 12581, Ex. 13.) On October 15, 2014, the FDIC ruled that (i) the Debtors and the Trust were a "covered company" and (ii) the payments contemplated by the settlements were premised on employment agreements and compensation plans that were prohibited by the federal regulations. (D.I. 12573, Ex. 5.) On October 29, 2014, the Trust filed an action seeking judicial review of the FDIC ruling on the First Payment Application under the Administrative Procedures Act ("APA") in the District Court for the District of Columbia. See WMI Liquidating Trust v. FDIC, No. 1:14-cv-01816 (RBW) (D.D.C.). Notice of the action was provided to the Claimants at issue in that action, but none sought to intervene or participate. On June 9, 2015, the D.C. District Court held that the FDIC had not acted arbitrarily or capriciously in denying the First Payment Application and precluding the Trust from making any payments to the Claimants pursuant to the settlements. (D.I. 12573, Ex. 7.)

In the interim on March 23, 2015, the Trust filed a second application with the FDIC seeking a ruling on whether it could make any payments to any of the non-settling Claimants under any

4

of their theories of recovery in the event they were ultimately settled or allowed by the Bankruptcy Court (the "Second Payment Application"). (D.I. 12581, Ex. 14.) On May 1, 2015, the FDIC denied the Second Payment Application in its entirety, holding that the Trust was a "covered company" barred from making any payments to any of the Claimants in any amount. (D.I. 12573, Ex. 6.) The Trust filed a second action under the APA in the D.C. District Court. See WMI Liquidating Trust v. FDIC, No. 1:15-cv-00731 (RBW) (D.D.C.). Notice was provided to the Claimants, but none sought to intervene or participate. On April 15, 2016, the D.C. District Court upheld the second FDIC determination as not arbitrary, capricious, or an abuse of discretion. (D.I. 12573, Ex. 8.)

The proceedings in the Delaware District Court had been stayed while the APA actions were pending in the D.C. District Court. (D. Del. D.I. 25, 36, 37, 38, 39, 47.)[2] On October 12, 2016, the Delaware District Court granted the motions of the FDIC and FRB to dismiss the Trust's amended complaint holding that there is no private right of action and that it lacked jurisdiction over the claims because there is no judicial review permitted of the FDIC ruling other than under the APA. (D. Del. D.I. 89 at 3 n.3.) On February 15, 2017, the District Court

---

[2] All citations to "D. Del. D.I." are to the record in the case of WMI Liquidating Trust v. FDIC, No. 1:14-cv-01097 (GMS) (D. Del.).

granted judgment on the pleadings in favor of the FDIC on the
cross-claims of the Claimants (finding the claims identical to
the Trust's claims that it had dismissed) because the Claimants
had no private right of action on the claims outside of an APA
action.  (D. Del. D.I. 114 at 3 n.4.)

On August 30, 2018, the Trust filed its Motion in this Court
seeking disallowance of all the Claimants' claims as a result of
the FDIC's determination that the Trust is precluded from paying
them and allowing the dissolution of the reserve established
under the Plan for them so that the funds can be paid to other
claimants.  (D.I. 12581.)  Certain of the Claimants opposed the
Motion and filed a Motion asking the Court to rule on whether the
Trust is a covered company and whether their claims could be paid
under the federal regulations.  (D.I. 12512.)  At the hearing
held on October 16, 2018, the Court granted the Trust's Motion
and denied the Claimants' Motion, finding that as a result of the
Delaware District Court's ruling, it did not have jurisdiction to
review or modify the FDIC's determinations and that those
determinations precluded any payment of the Claimants' claims.
(D.I. 12552 at 30-39.)  The Court directed the Trust to submit an
order memorializing that ruling.  (Id. at 39.)  The parties could
not agree on a form of order and submitted competing forms of
order.  (D.I. 12548, 12549.)  The Court held a hearing on the
dispute on November 1, 2018, at which time the Claimants asserted

that they had some claims that had not been decided by the FDIC

that should not be dismissed.  The Trust disagreed, asserting

that all claims had been submitted to the FDIC which had decided

none could be paid.  The Court directed the Trust to provide the

Claimants with copies of the Payment Applications it had filed

with the FDIC and asked for briefs on the issue.

On January 4, 2019, the Claimants filed additional briefs

articulating what claims they felt were not covered by the

Payment Applications.  (D.I. 12573, 12574, 12576, 12577, 12578.)

On January 25, 2019, the Trust filed its reply contending that

all claims had been encompassed in the FDIC's determinations.

(D.I. 12580.)  The matter is ripe for decision.


II.  <u>JURISDICTION</u>

The Court's jurisdiction is derivative of the District

Court's jurisdiction over bankruptcy matters.  "Each district

court may provide that any or all cases under title 11 and any or

all proceedings arising under title 11 or arising in or related

to a case under title 11 shall be referred to the bankruptcy

judges for the district."  28 U.S.C. § 157(a).

In this case, the Delaware District Court has ruled that it

does not have any jurisdiction to review or modify the FDIC's

determination that the Claimants' claims cannot be paid by the

Trust as a result of the federal "golden parachute" regulations.

7

(D. Del. D.I. 89 at 3.)  Therefore, this Court does not have
jurisdiction to review or modify the FDIC's determination.

However, to the extent that the Claimants are correct and
some of their claims were not, in fact, considered or determined
by the FDIC, the Court does have jurisdiction over those claims
under its power to allow or disallow claims filed in a bankruptcy
case.  Id. at § 157(b)(2)(B).


III. DISCUSSION

The Claimants assert that certain of their claims were never
addressed by either of the FDIC's determinations.  Those claims
arise under the Debtors' Executive Officer Severance Plan
("EOSP"), the WaMu Severance Plan, individual employment
agreements including Special Bonus Claims, and the Equity
Incentive Plan.  Because they are entitled to those claims, they
also contend that they are entitled to their attorneys' fees as
prevailing parties under state law.  In addition, one claimant,
Anthony Vuoto, asserts that the FDIC held that claims under the
Debtors' Executive Target Retirement Income Plan (the "ETRIP")
could be paid and that he did not receive his payment.

The Trust contends that Vuoto is not entitled to any payment
under the express terms of the ETRIP plan.  The Trust also argues
that the FDIC determinations specifically dealt with all of the
other claims of the Claimants and precluded any payment of them.

8

It asserts that no attorneys' fees are due to the Claimants because they are not prevailing parties and because applicable state law and bankruptcy law do not allow such claims.

A.   EOSP, WaMu Severance Plan, Special Bonus Opportunity Agreements, and Equity Incentive Plan

The Claimants contend that the FDIC did not consider or deny payment of their claims under various benefit plans.  First, they contend that the FDIC specifically held that the Special Bonus Opportunity claims were not governed by the golden parachute provisions of the regulations.  Further, they contend that the FDIC did not consider alternate claims they had under the plans and individual employment agreements, which they contend are exempt from the regulations.

In support of their first contention, the Claimants quote part of footnote 31 of the Second Payment Application decision: "the 'Special Bonus Opportunity' agreements entered into between WMI and the immediately preceding Non-Settling Claimants are not governed by Part 359 because they do not allow a waiver of the Employment Requirement."  (D.I. 12573, Ex. 6 at 6 n.31.)  With respect to their second contention, the Claimants claim that their claims are not governed by Part 359 of the federal regulations either because the definition of a golden parachute under those regulations does not include payments pursuant to nondiscriminatory severance pay retirement plans and other benefits that are not contingent on termination or change of

9

control.   12 C.F.R. § 359.0(b).

The Trust responds that the Claimants fail to include in their quote of footnote 31 the last sentence:   "Notably, the immediately preceding Non-Settling Claimants also assert claims under other agreements subject to Part 359, rendering any aggregate payment covering such agreements (including the cited Special Bonus Opportunity agreement) likewise within the ambit of the Golden Parachute Regulations."   (D.I. 12573, Ex. 6 at 6 n.31.)   Consequently, the Trust argues that because the Claimants asserted claims that were found to be governed by the federal regulations, the FDIC concluded that ALL their claims must be disallowed.

The Court agrees with the Trust.   The Court first notes that in its determination of the First Payment Application, the FDIC specifically dealt with claims of the settling Claimants arising under individual Employment Agreements, Special Bonus Opportunity agreements, and the WaMu Severance Plan.   (D.I. 12573, Ex. 5 at 2-6.)   It found that those claims were governed by the golden parachute regulations because they were contingent on termination of employment which occurred after the Debtors were insolvent or filed bankruptcy.   (Id.)   The FDIC also ruled that "even if one or more of the Agreements was exempt from Part 359, the global nature of the settlements forming the basis of the Proposed Payments would require a Part 359 application for the Payments as

a whole." (Id. at 3.)

Similarly, in its decision on the Second Payment
Application, the FDIC expressly dealt with claims under Special
Bonus Opportunity agreements, individual employment agreements,
and the Equity Incentive Plan.  In that decision, the FDIC ruled
that payments under the Equity Incentive Plan were barred by the
golden parachute regulations.  (D.I. 12573, Ex. 6 at 9.)  It also
stated that even if the Special Opportunity Bonus claims of some
of the Claimants might not be governed by Part 359, because some
of the Claimants' other claims are covered by the golden
parachute regulations, no payments of any kind may be made to the
Claimants.  This is expressly stated in the last sentence of
footnote 31 quoted by the Trust.  (Id. at 6 n.31.)  It is also
clear from the conclusion reached by the FDIC:

> Section 359.4(b) specifically directs regulators
> to consider factors and circumstances indicating that
> the proposed payment would be contrary to the intent of
> section 18(k) of the FDI Act.  In considering the
> intent of section 18(k), the FDIC has been guided by
> the principle that regulatory authority under Part 359
> and section 18(d) was meant to prevent financially
> unstable institutions from awarding inappropriately
> lucrative benefits.  It remains within the discretion
> of the appropriate banking agency and the FDIC to
> assess whether the Proposed Payments would be
> consistent with the intent of section 18(d) and its
> regulation of prohibited golden parachute payments.
> A reduction in the amount of the Proposed
> Settlement Payments would not correct the issues cited
> in the First Payment Application Determination.
> Therefore, for the reasons stated, the present
> application is denied, and the Trust may not make any
> payments to either the Settling Claimants or the Non-
> Settling Claimants in any amount.

(Id. at 21 (emphasis added).)

Therefore, the Court concludes that the rulings of the FDIC plainly bar any payments by the Trust for ANY claims of the Claimants, including claims under the EOSP, the WaMu Severance Plan, Special Bonus Opportunity agreements, and the Equity Incentive Plan.

B.    Vuoto ETRIP Claim

Vuoto contends that his ETRIP claim should be paid because the FDIC specifically approved the payment of ETRIP Base Component Claims. (D.I. 12573 Ex. 6 at 6.) He also notes that this Court approved payment of all ETRIP claims based on the Trust's representation that the FDIC had approved them.

The Trust agrees that the FDIC allowed such payments but contends that Vuoto is not entitled to any payment under the terms of the ETRIP. It asserts that under the ETRIP an employee had to have a full calendar year of Executive Service in order for any claim to vest. (D.I. 12576, Ex. 2 at §§ 2.15, 2.16, 2.18, 3.4.) The Trust alleges that this is how the ETRIP has been interpreted for all employees. (D.I. 12580 at Ex. A, ¶¶ 11-16.) Since Vuoto's executive service commenced on March 1, 2007, and he was terminated on September 25, 2008, the Trust contends that he did not serve in that capacity for a full calendar year (either in 2007 or in 2008). Therefore, the Trust argues Vuoto has no ETRIP claim under the express terms of that plan.

Vuoto contends, however, that the Trust's interpretation of the ETRIP is faulty.  He argues that the plan's eligibility section deals in full years, not Plan Years, and in fact allows credit for a month if the executive served only one day in that month.  (D.I. 12576, Ex. 2 at § 2.15)  Further, he notes that an executive's Entry Date for purposes of the ETRIP is on "the later of (1) January 1, 2004, (2) date of hire; or (3) date they become" an executive level employee.  (<u>Id.</u> at § 2.13.)  If the Trust's interpretation were correct, Vuoto contends, the Entry Date would be January 1 of the year after the employee becomes an executive.

Upon a reading of the ETRIP plan, the Court concludes that the Trust's interpretation is the correct one.  The ETRIP plan provides that to calculate the amount of benefits due on termination, a formula is used based on, inter alia, the Final Average Pay and the Vested Percentage of the executive: ((6.5 x Final Average Pay x Executive Service/25) - offsets) x Vested Percentage.  The definition of Final Average Pay states that "If a Participant has less than five Plan Years which are not Partial Years ("Full Years") then Final Average Pay shall be calculated by dividing Compensation for all Full Years by the number of such Full Years."  (<u>Id.</u> at § 2.16.)  Thus, Full Years are defined as full Plan Years.  Plan Years are defined as calendar years from January 1 to December 31.  (<u>Id.</u> at § 2.22.)  Likewise, an

13

employee's Vested Percentage in the formula is premised on Full Years of Executive Service, which as noted above is defined to be Plan Years, i.e., calendar, not partial years.  (Id. at §§ 2.15, 3.4.)

The entry date provision and the allowance of credit for a month if an executive serves one day in the month is not inconsistent with this interpretation: if an employee becomes an executive on January 31 and is terminated on December 2, he or she could be given credit for those months and, if he or she was an executive for all 12 months of a calendar year, would be vested for that year.  Vuoto, however, was not an executive in each month of a calendar year (even with the credit given for serving in a partial month).  Because Vuoto had no Full Years of executive service, his Final Average Pay and his Vested Percentage are both zero resulting in no benefit due under the formula.  Therefore, the Court concludes that Vuoto's claim for an ETRIP benefit must be disallowed.

C.   Attorneys' Fees

The Claimants assert that they are entitled to attorneys' fees under California and Washington state law because they are prevailing parties with respect to the ETRIP and the Supplemental Executive Retirement Accumulation Plan (the "SERAP") claims that were allowed to some of them.  See Wash. Rev. Code Ann. § 49.48.030 (West 2010).

14

The Trust contends that they are not entitled to attorneys'
fees because (1) the benefit plans in question do not provide for
attorneys' fees for the prevailing party, (2) the claims are
based on plans which are governed by Washington - not California
- law which does not allow attorneys' fees unless a request is
filed within 10 days of prevailing on the claim, (3) any claim
for attorneys' fees under those plans have been released as a
result of the payment of those claims, (4) the Bankruptcy Code
does not allow attorneys' fees for unsecured claims that are
based on a statute rather than contract, and (5) attorneys' fees
can be allowed only for work done on the claims on which the
Claimants prevailed (which it contends was de minimus), and does
not include fees for all the other work done for the Claimants.

The Court agrees with the Trust.  As a result of the above
ruling, the only claims on which any of the Claimants "prevailed"
were the ETRIP and SERAP claims.  The Supreme Court has held that
in bankruptcy cases the American Rule applies such that
prevailing parties are not entitled to attorneys' fees absent a
contractual or specific statutory provision allowing them.
Baker Botts L.L.P. v. ASARCO LLC, 135 S. Ct. 2158, 2169 (2015).

The Claimants cite no contractual right to attorneys' fees
for a prevailing party under either the ETRIP or SERAP plans.
(D.I. 12576, Ex. 2; D.I. 12581, Ex. 12.)  Instead, they rely upon
California and Washington statutes which allow attorneys' fees

15

for employees prevailing on a wage claim.

    The ETRIP and SERAP expressly provide that they are governed
by Washington law (not California law).  (D.I. 12576, Ex. 2 at §
8.9; D.I. 12581, Ex. 12 at § 8.9.)  Under Washington law, a wage
claimant has 10 days to submit a request for attorneys' fees
after judgment is entered on its claim.  See Corey v. Pierce
Cty., 225 P.3d 367 (Wash. Ct. App. 2010) (finding that Washington
Superior Court Civil Rule 50, which requires that a motion must
be filed no later than 10 days after entry of judgment, applies
to motions for attorney's fees under the state wage statute).  In
this case, after the FDIC agreed that the ETRIP and SERAP claims
could be paid, the Trust obtained authority from this Court to
pay them on October 17, 2012.  (D.I. 10777 at ¶ 19.)  Therefore,
under Washington law, the Claimants had 10 days or until October
27, 2012, to seek attorneys' fees for those claims.  None of them
did.  Consequently, the Court concludes that no attorneys' fees
are due to the Claimants under Washington law.

    Further, under the terms of the ETRIP and SERAP plans, the
payment of the claims in 2012 resulted in a release of any other
claims that the Claimants may have had under those plans.
Section 8.1 of those plans provides that

        Any payment to any Participant . . . in accordance with
        the provisions of the Plan, shall to the extent thereof
        be in full satisfaction of all claims hereunder against
        the Plan.  . . . Any payment made pursuant to the power
        herein conferred upon the Committee shall operate as a
        complete discharge of all obligations of the Employer,

the Committee, and the Human Resources Committee, to the extent of the distributions so made.

(D.I. 12576, Ex. 2 at § 8.1; D.I. 12581, Ex. 12 at § 8.1.)

Finally, even if the statutory deadline had not passed and the claims not been discharged, it is questionable whether such a claim would be allowable under the Bankruptcy Code.  See, e.g., In re B456 Sys., Inc., No. 12-12859-KJC, 2017 WL 6603817, at *26 (Bankr. D. Del. Dec. 22, 2017) (concluding that "the plain language of Bankruptcy Code § 502(b) and § 506(b), when read together, indicate that post-petition interest, attorney's fees and costs are recoverable only by oversecured creditors."). Cases which allow post-petition attorneys' fees to unsecured creditors do so on the basis of the parties' contractual agreement, not on the basis of a statute.  See, e.g., Travelers Cas. & Sur. Co. v PG&E, 549 U.S. 443, 453-54 (2007); In re Sokolik, 635 F.3d 261, 264 (7th Cir. 2011); Ogle v. Fidelity & Deposit Co. of Maryland, 586 F.3d 143 (2d Cir. 2009); In re Tribune Media Co., No. 1:15-cv-01116-RGA, 2018 WL 6167504, at *2 (D. Del. Nov. 26, 2018).  Because the parties' contract in this case does not provide for attorneys' fees to the prevailing party, those cases are not applicable.

Therefore, the Court concludes that the Claimants are not entitled to attorneys' fees for having prevailed on their ETRIP and SERAP claims under the terms of those plans or under applicable state or federal law.

17

IV.  <u>CONCLUSION</u>

For the reasons set forth above, the Court will grant the Motion of the WMI Liquidating Trust and deny the Motion of the Claimants.

An appropriate Order is attached.


Dated: February 1, 2019          BY THE COURT:


Mary F. Walrath
United States Bankruptcy Judge

18